**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

In re:                                    ) Case No.: 09-035544 LMI
                                          )
    University Shoppes, LLC           ) Chapter 11
                                          )
    Debtor.                           )
                                          )
                                          ) **DISCLOSURE STATEMENT**
                                          )
_____ )

    University Shoppes, LLC, the above-captioned Debtor and Debtor-in-Possession, hereby

file and propose its Disclosure Statement in the form and content set forth herein.

Paul DeCailly Fl. Bar 0796301
3111 W. Dr. Martin Luther King Jr. Blvd
Suite 100
Tampa, FL 34233
Telephone (813) 286-2909
Fax (866) 906-5977
pdecailly@pdlaw.net
Attorney for Debtor.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE DEBTOR'S PLAN OF REORGANIZATION, AND NOTHING CONTAINED HEREIN WILL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN OF REORGANIZATION ON HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THE DESCRIPTION OF THE DEBTOR'S PLAN OF REORGANIZATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN OF REORGANIZATION ITSELF. EACH CREDITOR AND HOLDER OF AN INTEREST SHOULD READ, CONSIDER AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE PLAN OF REORGANIZATION.

THE MANAGEMENT OF THE DEBTOR BELIEVES THAT THE PLAN OF REORGANIZATION IS IN THE BEST INTERESTS OF CREDITORS AND HOLDERS OF INTERESTS. ALL CREDITORS AND HOLDERS OF INTERESTS ARE URGED TO VOTE IN FAVOR OF THE PLAN. TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY NO LATER THAN THE TIME SET BY THE COURT, UNLESS EXTENDED.

NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE PLAN OF REORGANIZATION OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN OF REORGANIZATION TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS OR DOCUMENTS ATTACHED HERETO OR INCORPORATED BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR. SUCH ADDITIONAL REPRESENTATIONS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN WILL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAYBE DEEMED APPROPRIATE. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF.

CREDITORS AND HOLDERS OF INTERESTS ARE ENCOURAGED TO REVIEW THE BANKRUPTCY DOCKET IN ORDER TO EVALUATE EVENTS WHICH OCCUR BETWEEN THE DATE OF THIS DISCLOSURE STATEMENT AND THE DATE OF THE CONFIRMATION HEARING. ALL CREDITORS WHO ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE

STATEMENT, INCLUDING THE PLAN OF REORGANIZAION AND THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT, PRIOR TO SUBMITTING A BALLOT PURSUANT TO THIS SOLICITATION.

IN THE EVENT THAT ANY OF THE CLASSES OF HOLDERS OF IMPAIRED CLAIMS VOTE TO REJECT THE PLAN OF REORGANIZATION, (1) THE DEBTOR MAY ALSO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE PLAN OF REORGANIZATION WITH RESPECT TO THAT CLASS UNDER THE SO-CALLED "CRAM-DOWN" PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE, 11 U.S.C. §1129, AND, IF REQUIRED, MAY AMEND THE PLAN OF REORGANIZATION TO CONFORM TO SUCH REQUIREMENTS, OR (2) THE PLAN OF REORGANIZATION MAYBE OTHERWISE MODIFIED OR WITHDRAWN. THE REQUIREMENTS FOR CONFIRMATION, INCLUDING THE VOTE OF HOLDERS OF IMPAIRED CLAIMS TO ACCEPT THE PLAN OF REORGANIZATION AND CERTAIN OF THE STATUTORY FINDINGS THAT MUST BE MADE BY THE BANKRUPTCY COURT, ARE SET FORTH UNDER THE CAPTION "VOTING ON AND CONFIRMATION OF THE PLAN."

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................................. 5
  A. PURPOSE OF DISCLOSURE STATEMENT ................................................................................. 5
  B. SOURCE OF INFORMATION ......................................................................................................... 6
  C. MANNER OF VOTING ON THE PLAN ........................................................................................... 6
  D. HEARING ON CONFIRMATION OF THE PLAN ............................................................................ 7
  E. ACCEPTANCE REQUIRED TO CONFIRM PLAN. .......................................................................... 7
ARTICLE I .......................................................................................................................................... 7
DEFINITIONS ...................................................................................................................................... 7
ARTICLE II ......................................................................................................................................... 8
PRELIMINARY STATEMENT OF HISTORY AND FINACIAL CONDITION OF DEBTOR .......... 8
  A. BACKGROUND ............................................................................................................................... 8
  B. COMMENCEMENT OF CHAPTER 11 CASE ................................................................................. 9
  C. PENDING LITIGATION ................................................................................................................. 10
  D. SUMMARY OF PLAN OF LIQUIDATION. (CONSULT PLAN FOR FULL DETAILS). ............. 10
     1.    In General ........................................................................................................................... 10
     2.    Property to be distributed ................................................................................................. 11
     3.    Classifications and Treatment of Claims and Interests .................................................... 11
     4.    Executory Contracts .......................................................................................................... 13
     5.    Anticipated Means of Execution of Plan ........................................................................... 14
  E. HISTORICAL DATA AND FUTURE PROJECTIONS ...................................................................... 14
ARTICLE III ...................................................................................................................................... 14
DEBTOR'S OPERATION AND STRUCTURE ................................................................................... 14
  A.    SYNOPSIS OF OPERATION IN CHAPTER 11 ............................................................................ 14
  B.    OBJECTIONS TO CLAIMS .......................................................................................................... 15
  C.    MEMBERS .................................................................................................................................. 15
ARTICLE IV ...................................................................................................................................... 15
TAX IMPLICATIONS OF THE PLAN ............................................................................................... 15
ARTICLE V ....................................................................................................................................... 15
ANALYSIS OF THE PLAN VS. CHAPTER 7 LIQUIDATION ......................................................... 15
ARTICLE VI ...................................................................................................................................... 17
RISK ANALYSIS ............................................................................................................................... 17
ARTICLE VII ..................................................................................................................................... 17
POST-CONFIRMATION DEBTOR'S STRUCURE ........................................................................... 17
  A.    EQUITY STRUCTURE ................................................................................................................ 17
  B.    MANAGING MEMBERS ............................................................................................................. 17
  C.    RETENTION OF ASSETS AND OPERATIONS ............................................................................ 17
ARTICLE VIII ................................................................................................................................... 17
UTILIZATION OF CRAM DOWN .................................................................................................... 17
ARTICLE IX ...................................................................................................................................... 18
MISCELLANEOUS PROVISIONS ................................................................................................... 21
ARTICLE X ....................................................................................................................................... 22
CONCLUSION ................................................................................................................................... 22

# INTRODUCTION

The Debtor, University Shoppes, LLC has filed with the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Bankruptcy Court"), its Plan of Reorganization (the "Plan"). The Debtor submits this Disclosure Statement (the "Disclosure Statement") pursuant to Section 1125 of the Bankruptcy Code, 11 U.S.C. §101, et. seq. (the "Bankruptcy Code"), in connection with the solicitation of votes on the Plan from holders of Impaired Claims against the Debtor and the hearing on confirmation of the Plan to be scheduled.

*[This Disclosure Statement has not yet been approved by the Bankruptcy Court in accordance with Section 1125(b) of the Bankruptcy Code as containing information of a kind and in sufficient detail adequate to enable a hypothetical reasonable investor typical of the holders of Claims of the relevant Voting Classes (as defined below) to make an informed judgment whether to accept or reject the Plan. Approval of this Disclosure Statement by the Bankruptcy Court and the transmittal of this Disclosure Statement does not, however, constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan and should not be interpreted as being a recommendation by the Bankruptcy Court either to accept or reject the Plan.]*

**IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR.**

Accompanying or included as exhibits to this Disclosure Statement are copies of the following:

1. Market Positioning and Market Analysis attached as Exhibit"1"
2. Current Rent Roll as Exhibit "2"
3. December 09 – March 30, 2010 P&L as Exhibit "3"
4. Form of Ballot, attached as Exhibit "4"

### A. PURPOSE OF DISCLOSURE STATEMENT

University Shoppes, LLC, the above captioned Debtor and Debtor-in-Possession (herein the "Debtor"), provides this disclosure Statement (the "Disclosure Statement") to all of the known creditors and parties in interest in order to disclose that information deemed by the Debtors to be necessary to arrive at a reasonably informed decision in exercising a right to vote for acceptance or rejection of the plan of reorganization dated March 28, 2010 (the "Plan"). This Disclosure Statement is intended to enable the Debtors' creditors to make an informed decision in voting to

accept or reject the plan.  For the reasons set forth more fully herein, the Debtor hereby recommends and solicits acceptance of its proposed plan by all persons entitled to vote on the Plan.

## B. SOURCE OF INFORMATION

The Source of the information contained within this Disclosure Statement is derived from the Debtors' books and records, historical data, and financial projections prepared by the Debtor. Additionally the Debtor has attached as "Exhibit A" a recent Market Positioning and Pricing Analysis prepared on or about January 27, 2010. The information contained herein has not been subjected to a certified audit.  The records kept by the Debtor are dependant upon accounting performed by the Debtor. Although the Debtor has made great effort be accurate, because a current audit does not exist, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracies or omissions.  Other than those set forth in this statement, the Debtor has not authorized any representations concerning the Debtor. In arriving at your decision, you should not rely on any representations or inducements made to secure your acceptance other than those which are contained in this statement.

## C. MANNER OF VOTING ON THE PLAN

All undisputed creditors entitled to vote on the Plan may cast their vote for or against the Plan by COMPLETING, SIGNING, DATING, AND MAILING THE BALLOT accompanying this Disclosure Statement to the CLERK OF THE COURT, UNITED STATES BANKRUPTCY COURT, CLAUDE PEPPER FEDERAL BUILDING, 51 S.W. 1ST AVE, RM. 1517, MIAMI, FL 33130, ON OR BEFORE THE TIME STATED THEREON.

A copy of the ballot should be mailed to Debtor's counsel Paul DeCailly, at 3111 W. Dr. Martin Luther King Jr. Blvd, Suite 100, Tampa, FL 33607.

## D. <span style="font-variant:small-caps">Hearing on Confirmation of the Plan</span>

By separate order, the United States Bankruptcy Court of the Southern District of Florida, Miami, shall schedule the hearing on the confirmation of the plan. Each party-in-interest will receive, either with this Disclosure Statement or under separate cover, the Bankruptcy Court's notice of hearing on Confirmation of the Plan. Attendance is not mandatory, but creditors are invited to attend the Confirmation Hearing on the Plan and voice their opinions for or against any objections filed with regard to Confirmation of the Plan.

## E. <span style="font-variant:small-caps">Acceptance Required to Confirm Plan</span>

As a creditor, your acceptance is important. In order for the plan to be deemed accepted, the ballots must be tabulated. Of the ballots cast, more than one-half (1/2) in number of votes must be for the Plan. In addition, of the ballots cast, the favorable majority must also represent two-thirds (2/3) of the dollar amounts of all votes cast.

Furthermore, unless there is unanimous acceptance of the plan by a class that is deemed impaired under the plan, the Bankruptcy Court must also determine that, under the plan, members of such class will receive, as of the effective date of the plan, property of a value that is not less than the amount that such class of Creditors would receive or retain should the Debtor liquidate under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.

## ARTICLE I

## DEFINITIONS

The definitions set forth in Article I of the plan are incorporated herein.

## ARTICLE II
### PRELIMINARY STATEMENT OF HISTORY AND FINACIAL CONDITION OF DEBTOR

### A. BACKGROUND

University Shoppes, LLC is a single asset real estate holding company that owns a multi-unit shopping plaza, commonly known as a "Strip Mall" located at the 1601 Southwest 107th Avenue Miami, FL 33165. Built in 1987, this two story structure has a gross leasable size of 126,126 total sq.ft. Currently the center is 90% leased, however, the Anchor Tenant is paying less than a third of the going rate for the space that it occupies. This arrangement was put into place by the prior State Court Receiver, Mr. Michael Fey, at the behest of the claimed mortgage holder, Bank of America.

At the time the property was purchased it had an appraised value of $34,000,000.00. The Debtor purchased the property at market price, investing $9,000,000.00 of its own funds into the purchase. The balance was financed with EuroHypo Bank in the amount of $25,500,000.00 at a rate of interest of 6.560% that was to mature 10 years from the date of closing. The first 5 years of the loan was to be interest only payments with the remaining 60 months to be paid on a net cash flow amortization. The note is set to mature on May 11, 2016.

Throughout the Debtor's operation, the Anchor Tenant, Roxy's Theater Group has been a problematic tenant by paying late or not paying at all. The Debtor gave Roxy's every opportunity to make good on its promises, but eventually Roxy's stopped paying rent all together. Over this same time period, the Debtor was unable to maintain the monthly interest payments on the Mortgage due to the unpaid rents by Roxy's. Litigation ensued between Bank

of America, the claimed note servicer, and the Debtor, and also between the Debtor and Roxy's Theater Group in an eviction proceeding.

During the course of the Mortgage Foreclosure proceedings, it became apparent that Bank of America did not actually hold a valid assignment of the note and mortgage, and that they were in communication with Roxy's Theater Group encouraging continued default on rent payments, with promises of a better deal once the foreclosure is complete. This promise was realized when the State Court appointed a receiver and he immediately negotiated a new oral lease with Roxy's for $15,000.00 a month, which is less than $1/3^{rd}$ of the market month rate for the space. At the same time the receiver was appointed, the Debtor obtained a writ of possession for the Roxy's Space, but Bank of America rushed in with an emergency motion to stop the eviction.

## B. COMMENCEMENT OF CHAPTER 11 CASE

Due to the financial struggles of University Shoppes due in large part to the Roxy's Theater issue, the appointment of the receiver, and the backroom deal between the Bank, the Receiver and Roxy's the Debtor filed for Chapter 11 Bankruptcy protection on November 19, 2009 in the Southern District of Florida, Miami Division. The case was assigned to the Honorable Laurel M. Isicoff.

Upon the commencement of the case, the Debtor became a "Debtor-in-Possession" and continues to have possession of the retail center, and is currently operating it. The Court denied in part a motion to excuse turn over brought by Bank of America, but the Debtor is required to clear large expenditures with the prior State Court Receiver.

## C. PENDING LITIGATION

Prior to the filing of the Chapter 11 Bankruptcy, the Debtor was involved in the following litigation:

      a.  Mortgage Foreclosure captioned as Bank of America, N.A. as Successor by Merger to Lasalle Bank, N.A. as Trustee for the Registered Holders of JP Mortgage Chase Commercial Mortgage Securities Corp. 2006-LDP8 Commercial Mortgage Pass-through Certificates, Series 2006-LDP8 vs. University Shoppes, LLC, Jorge Ramos; HBar Realty, LLC, Prestige Builders Corp; and The Roxy Theater Group. 11th Judicial Circuit Court, Miami Dade County Case No. 09-53179 CA 13

      b.  University Shoppes, LLC v. Roxy Performing Arts Theater Group. County Court for the County of Miami Dade 09-5240cc25

## D. SUMMARY OF PLAN OF REORGANIZATION. (*CONSULT PLAN FOR FULL DETAILS*).

### *1. In General*

The Debtor believes that the Plan provides the greatest and earliest possible recoveries to the Debtor's Creditors. The Debtor therefore believes that acceptance of the Plan is in the best interest of each and every Class of Claims and Interests and recommends that the Voting Classes vote to accept the Plan.

The Debtor must necessarily fund the Plan from business operations, and from the sale of portions of the Debtor's real property and continued leasing program. Without a Chapter 11 reorganization, the Debtor would have been forced to terminate operations or face a voluntary or involuntary Chapter 7 bankruptcy. The significant amount of Secured and Unsecured Claims against the Debtor preclude any increased dividends to Unsecured Creditors. Unsecured Creditors would obtain nothing if the Chapter 11 case is not successful and the Debtor is forced

into a liquidating bankruptcy. A summary of the principal provisions of the Plan is set forth below.

This summary is qualified in its entirety by reference to the provisions of the Plan and, to the extent there is any conflict between this summary and the Plan, the language of the Plan will govern.

Among other things, the plan provides for the classification and treatment of properly and timely claims filed against the Debtors; the funding mechanism for the Plan; provisions governing distribution under the plan; provisions for the treatment of executory contracts and unexpired leases; provisions for the treatment of disputed claims; conditions to, and effects of plan confirmation; and provisions regarding the Bankruptcy Court's jurisdiction after the effective date.

## 2. Property to be distributed

The collateral of secured creditors will be retained, surrendered, or transferred pursuant to the terms and conditions of distribution more thoroughly described herein.

## 3. Classifications and Treatment of Claims and Interests

**Unclassified Claims:**

Administrative Claims are unimpaired under the plan. The Debtor shall pay the allowed claims of the following administrative claims as set forth below:

Any administrative claim allowed under Section 503 of the Bankruptcy Code, upon appropriate application and as granted by the Court, the Debtor shall pay in full and in cash within thirty (30) days of the effective date of the plan or as otherwise agreed between the claimant and Debtor.

Debtor paid a $7,500.00 retainer with $4,500.00 for pre-petition services to Counsel of record, Paul DeCailly with the remaining $3000.00 to be applied to post petition services. As approved by the Court, additional fees shall be paid within fourteen (14) days of the effective date of the plan or as agreed between Debtor and Counsel.

(a) **Class I Priority Tax Claims: (Unimpaired)** Each Holder of an Allowed Priority Tax Claim shall be paid in cash on the Effective Date of the Plan. Notwithstanding the foregoing, each Holder of an Allowed Priority Tax Claim may be paid under such terms as may be agreed upon by both the Holder of such allowed claim and the Debtor or Reorganized Debtor, as the case may be.

(b) **Class II Priority Claims (Unimpaired)**: Each Holder of an Allowed Priority Claim shall be paid in cash 14 days after the Effective Date of the Plan. Notwithstanding the foregoing, each Holder of an Allowed Priority Claim may be paid under such terms as may be agreed upon by both the Holder of such allowed claim and the Debtor or Reorganized Debtor, as the case may be.

(c) **Class III secured Claim of Bank of America (Impaired):**

The Class III Claim of Bank of America shall be treated as follows:

    a. Bank of America shall have an Allowed Claim on its Collateral in the amount of $16,000,000.00, or as determined by the Court upon proper application.

    b. The Amount of Bank of America's Allowed Secured Claim shall be determined by the Court on Debtor's objection to Bank of America's Claim or by agreement by the parties.

    c. Bank of America shall retain its lien, to the extent of the secured portion of the Allowed Class three Claim, however, Debtor shall make interest only payments on $23,000,000.00 at 4.20% commencing 60 days after confirmation for 48 months, and thereafter per the contract terms at the full amount of the balance due under the note.

    d. The Balance of Claimant's indebtedness over $23,000,000.00

    e. The Debtor has the exclusive right to sell or refinance the property for the current agreed value of $16,000,000.00 in full satisfaction of the debt within the first 48 months, but only after the first 12 months after confirmation can the option to sell or refinance be exercised by the Debtor.

(d) **Class IV: Second Lien on Property of HBAR Reality, LLC: (Impaired):** HBAR Reality, LLC shall have an Allowed claim on its Collateral in the amount of 10% of the outstanding Loan Balance payable at 0.00% in 12 equal monthly payments. The Balance of HBAR Reality, LLC Allowed Claim shall be treated as an unsecured claim in Class 6.

(e) **Class V: Unsecured Portion of Bank of America's Claim (Impaired):** Bank of America will be paid an amount equal to all funds that are in possession of the Debtor in the DIP Account as of March 30, 2010, all money currently held by Creditor, Bank of America, in escrow for Taxes, Insurance and Repairs and an assignment of all rights to pursue and collect the any judgment against Roxy Theater Group for past due rents as payment in full for the unsecured portion of their claim.

(f) **Class VI Unsecured Contingent Creditor (Impaired):** HBAR Reality, LLC shall receive no further distribution under the plan pending the determination the amount due and thereafter, shall receive an additional 50% of its claim at 0.00% interest payable in 60 equal monthly payments after deducting the 10% it received in Class IV of the plan.

### 4. Executory Contracts

Any and all Executory Contracts and unexpired leases of the Debtors not expressly assumed herein, assumed prior to the Confirmation Date, or not at the Confirmation Date the subject of pending application to assume, shall be deemed to be rejected.

Specifically, Debtor assumes all tenant leases with the exception of Roxy Theater Group. **The Debtor rejects any lease, oral or written that exists or may exist between Debtor and Roxy's Theater Group.**

### 5. Anticipated Means of Execution of Plan

The cash disbursements required to be made under this plan will be made from the rent collected from tenant net the normal monthly expenses and maintenance associated with the operation of the property. Debtor also expects the investment of new capital in the amount of $350,000.00 or more from Quick Capital Corporation and the return of payments made by Debtor to insiders within the preference listed in the Debtor Statement of Financial Affairs in the amount of $417,263.00. The new capital and the returned funds will be used to create a new repair reserve fund to make necessary major repairs and for renovation of the Roxy's Space upon the tenant vacating the premises. These repairs and renovations are a necessary component of the Debtor reorganization as the Roxy space is the largest continues space available for lease, and should be generating $49,000.00 or more in additional monthly rent.

### E. Historical Data and Future Projections

See attached "Exhibit A" for information contained in this section.

## ARTICLE III

## DEBTOR'S OPERATION AND STRUCTURE

### A. SYNOPSIS OF OPERATION IN CHAPTER 11

Upon filing of this case the Creditor brought a motion to excuse turn over of funds held by the State Court Appointed Receiver, and to keep him on in the role of receiver for the pendency of this case. The Court Granted the Motion in part, and allowed the receiver to stay on the case in more of a supervisory role as a means of adequate protection for the main creditor, Bank of America.

Throughout this case the Debtor has maintained day to day control over the property, and has maintained all essential services, made required repairs and collected the rents. The Debtor

has arranged for additional investment from outside sources to provided needed funds for repairs and renovations. This Debtor has situated itself for a successful reorganization under the proposed plan.

### B. OBJECTIONS TO CLAIMS

Pursuant to the plan, the Debtor may object to any scheduled claim or proof of claim filed against the Debtor. Such an objection shall preclude to the consideration of any claim as allowed for the purposes of timely distribution in accordance with the plan. Debtor is also investigating whether there are any preferential or otherwise voidable transfers which will provide additional funds for distribution.

### C. MEMBERS

Post-Confirmation, the liquidating Debtor shall continue to be comprised of the following members: University, LLC and add Quick Capital Corporation as a special member with said membership interest to be equal to the amount in investment made. Debtor shall make all necessary changes to its membership agreement to effectuate the addition of the new member.

## ARTICLE IV

## TAX IMPLICATIONS OF THE PLAN

The Debtor believes that confirmation of the plan will not have any adverse tax implications for the estate. The Debtor strongly urges that each creditor consult with their own tax advisor regarding the federal, state, local, and other tax consequences which the implementation of the plan will have on them.

## ARTICLE V

## ANALYSIS OF THE PLAN VS. CHAPTER 7 LIQUIDATION

All payments as provided for in the Debtor's plan shall be financed though the operation

of the property and the collection of rents, and through the improvement of the property, and final eviction of an anchor tenant who has not pulled its fair share with some help from outside sources.

The Debtors have filed its monthly operating statement since the filing of the bankruptcy petition which are attached hereto as Exhibit 2.

Management believes that its plan to provide full market value for all claims of creditors is in the best interest of the creditors.

In the event of liquidation under Chapter 7 the following is likely to occur:

(a) An additional tier of administrative expenses entitled to priority over unsecured claims and under section 507(a)(1) of the Bankruptcy Code would be incurred. Such administrative expenses would include trustee's commissions and fees to the trustee's accountant, attorneys and other professionals likely to be retained by him/her for the purposes of liquidating the assets of the Debtor.

(b) It is unlikely that a Chapter 7 trustee could obtain a higher and better offer than what the creditors stand to receive through reorganization. There exists no advantage to justify the additional administrative expenses by appointing a Chapter 7 trustee since this plan provides for the payment to the first secured creditor far more money than it would receive if the property were liquidated today.

Predicated upon the foregoing, it is Management's opinion that the liquidation value of the Debtor would be insufficient to make payments to any class of creditor other than to the secured creditors, leaving little or no money available for claims of the other classes of creditors such as the general unsecured creditor classes.

## ARTICLE VI

## RISK ANALYSIS

As in most Chapter 11 Plans of either reorganization or liquidation, there is a risk that the Debtor will not be able to make payments as proposed under the plan due to the speculative nature of the funding mechanism. This Plan depends on the continued occupancy rates of about 90%, however, the eviction of a non-paying anchor tenant, renovation of the space, and the procurement of a paying tenant will add an additional $35,000.00 positive cash flow per month over and above what the Debtor was receiving for the 12 months prior to filing.

## ARTICLE VII

## POST-CONFIRMATION DEBTOR'S STRUCURE

### A. EQUITY STRUCTURE

Upon the effective date, the Debtor shall continue to operate.

### B. MANAGING MEMBERS

Upon the effective date, the Debtor's Managing Members shall remain unchanged.

### C. RETENTION OF ASSETS AND OPERATIONS

Upon the effective date, the Debtor shall retain all their assets and continue to operate their business. Upon the effective date, the Debtor shall be free to operate and to perform any and all tasks authorized by their articles of organization without further order from this Court.

## ARTICLE VIII

## UTILIZATION OF CRAM DOWN

If all of the applicable provisions of 11 U.S.C. §1129(a) other than paragraph (8), are found to have been met with respect to the Plan, the Debtors may seek confirmation pursuant to 11 U.S.C. §1129(b). For the purposes of seeking confirmation under the cram-down provisions

of the Code, should that alternative means of confirmation prove to be necessary, Debtors

reserve the right to modify or vary the treatment of the claims of the rejecting classes so as to

comply with Section 1129(b) of the Code.

## ARTICLE IX

### DISCHARGE, RELEASE, LIMITATION
### OF LIABILITY AND GENERAL INJUNCTION

**A. <u>Discharge of Claims and Termination of Equity Interests</u>**

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the

Confirmation Order will operate as a discharge, pursuant to Section 1141 (d) of the Bankruptcy

Code, to the fullest extent permitted by applicable law, as of the Effective Date, of any and all

debts of, and Claims of any nature whatsoever against, the Debtor that arose at any time prior to

the Effective Date, including any and all Claims for principal and interest, whether accrued

before, on, or after the Petition Date, if applicable. Without limiting the generality of the

foregoing, on the Effective Date, the Reorganized Debtor and its successors or assigns, will be

discharged from any debt that arose prior to the Effective Date and from any and all debts of the

kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a

Proof of Claim based on such debt was filed pursuant to Section 501 of the Bankruptcy Code, (b)

a Claim based on such debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy

Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan.

As of the Effective Date, except as otherwise expressly provided in the Plan or in the

Confirmation Order, all Persons and Entities, including all Holders of a Claim or Equity Interest,

will be forever precluded and permanently enjoined to the fullest extent permitted by applicable

law from asserting directly or indirectly against the Debtor, the Reorganized Debtor, or any of its

successors and assigns, or the assets or Properties, any other or further Claims, debts, rights, causes

of action, remedies, Liabilities, or Equity Interests based upon any act, omission, document,

instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective

Date or that occurs in connection with implementation of the Plan.

In accordance with the foregoing, except as specifically provided in the Plan or the

Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all

such Claims and other debts and Liabilities against the Debtor, pursuant to Sections 524 and 1141 of

the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor, at any

time, to the extent that such judgment relates to a discharged Claim, Liability, or debt.

## B. Post-petition Disclosures and Solicitation

Consistent with 11 U.S.C. §§1123(b)(3)(A) and 1125(e), and applicable law, the Debtor

and its directors, officers, employees, agents, representatives, Professionals (acting in such

capacity), and their respective heirs, executors, administrators, successors, and assigns, will

neither have nor incur any Liability whatsoever to any person or other entity for any act taken or

omitted to be taken in good faith in connection with or related to the formulation, preparation,

dissemination, implementation, confirmation, or consummation of the Plan, this Disclosure

Statement, or any contract, instrument, release, or other agreement or document created or

entered into, or any other act taken or omitted to be taken, in connection with the Plan or the

Reorganization Case. The rights granted under this Article are cumulative with (and not

restrictive of) any and all rights, remedies, and benefits that the Reorganized Debtor and its

agents have or obtain pursuant to any provision of the Bankruptcy Code. This exculpation from

liability provision is an integral part of the Plan and is essential to its implementation. Consistent

with 11 U.S.C. §1144, the Bankruptcy Court shall retain sole and exclusive jurisdiction for a

period of 180 days following the entry of the Confirmation Order to consider modification of this

exculpation provision in the event that any Holder of an Allowed Claim asserts that the Confirmation Order was procured by fraud.

## C. Barton Doctrine

The "Barton Doctrine," *e.g. Barton* v. *Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court), which prohibits a party from suing either a trustee, the officers of a debtor-inpossession, or their attorneys, in a non appointing court for acts done in their official capacity, shall pertain to the provisions of this Article, and shall stand as one of the bases for enforcement of the provisions herein. *See, e.g, In the Matter of Linton,* 136 F.3d 544, 545 (7th Cir. 1998); *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("It is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a nonappointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court ... counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee. "); *Mangun v. Bartlett (In re Balboa Improvements, Ltd)*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court); *Matter of Krikava,* 217 B.R. 275, 279 (Bankr. D. Neb. 1998) ("Consent of the appointing bankruptcy court is required even when the plaintiff seeks to sue in another federal court.").

## D. General Injunction

Pursuant to Sections 105, 1123,1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Confirmation Date, except as otherwise provided in the Plan or in the Confirmation Order,

all persons or other entities that have held, currently hold, or may hold a Claim or other debt, Liability, or Equity Interest that is discharged pursuant to the terms of the Plan are and will be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged Claims, debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan:

    a.  commencing or continuing in any manner any action or other proceeding against the Reorganized Debtor or its Properties;

    b.  enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor, or its Properties;

    c.  creating, perfecting, or enforcing any Lien or encumbrance against the Estate, the Debtor, the Reorganized Debtor, or its Properties;

    d.  asserting a setoff, right of subrogation, or recoupment of any kind against any debt, Liability, or obligation due to the Debtor, the Reorganized Debtor, or its Properties;

    e.  without limiting the foregoing, commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; and

    f.  commencing or continuing, in any manner or in any place outside the Bankruptcy Court, any action, suit, proceeding, claim, or cause of action against any officer or director of the Debtor-in-Possession or Professional for acts done in the course of such person's duties and official capacity during the course of the Reorganization Case, in contemplation thereof, or otherwise, including but not limited to the consolidation, preservation and liquidation of the Estate and such tasks necessarily incident thereto.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

Notwithstanding any other provisions of the plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for distribution on account of such claims shall not be paid in accordance with the provisions of this plan until such claim has become an allowed claim by final order.  If allowed, the claim shall be paid on the same terms as if there had been no dispute.

Anytime before the confirmation date, the Debtor may modify the plan, but may not modify the plan so that the plan, as modified, fails to meet the requirements of § 1122 and § 1123 of the Bankruptcy Code. After Debtor files a modification with the Bankruptcy Court, the modified plan shall become the amended plan.

At any time after the confirmation date, and before a substantial consummation of the plan, the Debtors may modify the plan with permission of the Court so that the plan, as modified, meets the requirements of section 1122 and section 1123 of the bankruptcy code. The plan, as modified under this paragraph, shall become the amended plan.

After the confirmation date, the Debtors may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the plan or in the order of confirmation, in such manner as it may be necessary to carry out the purpose and effect of the plan.

## ARTICLE X

## CONCLUSION

Under the plan, creditors and equity security holders of Debtor will participate in some manner in the distribution to be made thereunder. The Debtor believes that the distributions contemplated in its plan are fair and afford all claimants and interested holders equitable treatment. *Accordingly, the Debtor urges each creditor to support the Plan by returning their ballots accepting the plan.*

Dated: March 29, 2010

University Shoppes, LLC, Debtor
By: University LLC
Managing Member

/s/ Paul DeCailly
Paul DeCailly, Attorney at Law
3111 W. Dr. Martin Luther King Jr. Blvd
Suite 100
Tampa, FL 33607
Telephone (813) 286-2909
Fax (866) 906-5977
Florida Bar No. 796301
Attorney for Debtors