# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

In re:                                   ) Case No.: 09-035544
                                         )
    University Shoppes, LLC,         ) Chapter 11
                                         )
    Debtor.                          )
                                         ) **CHAPTER 11 PLAN OF**
                                         ) **REOGANIZATION**
                                         )

University Shoppes, LLC, the above-captioned Debtor and Debtor-in-Possession, hereby file and propose its Chapter 11 Plan of Reorganization in the Form and Content set forth herein.

Paul DeCailly Fl. Bar 0796301
3111 W. Dr. Martin Luther King Jr. Blvd
Suite 100
Tampa, FL 34233
Telephone (813) 286-2909
Fax (866) 906-5977
pdecailly@pdlaw.net
Attorney for Debtor.

## Table of Contents

ARTICLE I ..................................................................................................................... 3
   *Definitions* ............................................................................................................. 3
ARTICLE II .................................................................................................................... 5
   *Classifications of Claims and Interests* ............................................................... 5
ARTICLE III ................................................................................................................... 6
   *Treatment of Claims and Interests* ..................................................................... 6
ARTICLE IV ................................................................................................................... 8
   *Impairment* ........................................................................................................... 8
ARTICLE V .................................................................................................................... 9
   *Means of Execution and Security for Payments* ................................................ 9
ARTICLE VI ................................................................................................................... 9
   *Executory Contracts* ............................................................................................ 9
ARTICLE VII .................................................................................................................. 9
   *Effect of Confirmation* ........................................................................................ 10
ARTICLE VIII ............................................................................................................... 10
   *Cram Down, Modification, Substantive Consolidation* ...................................... 10
ARTICLE IX ................................................................................................................. 11
   *Retention of Jurisdiction* .................................................................................... 11
ARTICLE X .................................................................................................................. 12
   *Miscellaneous* .................................................................................................... 12

## ARTICLE I

### *Definitions*

For the purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article and, any term used in the Plan which is not defined below, but which is used in the Bankruptcy Code, shall have the meaning assigned to it in the Bankruptcy Code.

(a) "Administrative Claim" shall mean a Claim against the estates of the Debtor allowed by order of the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code or incurred by the Debtor in its ordinary course of business from September 4, 2008 to the Confirmation Date and shall include all fees payable pursuant to section 1930 of title 28, United States Code.

(b) "Allow", "Allowed", "Allowance" or words of similar meaning shall mean with respect to a Claim against the estates of the Debtor that no objection has been interposed within the applicable period of limitation fixed by this Plan or by the Bankruptcy Court and that such period of limitation has expired; or that the Claim has been allowed by an order of the Bankruptcy Court that is no longer subject to appeal or certiorari and as to which no appeal or certiorari is pending.

(c) "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, title 11, United States Code, which governs the Chapter 11 case of the Debtor.

(d) "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 case of the Debtor or the United States District Court for the Southern District of Florida having jurisdiction over

any part or all of the Chapter 11 case of the Debtor in respect of which the reference has been withdrawn pursuant to section 157(d) of title 28, United States Code.

(e) "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida), as now in effect or hereafter amended.

(f) "Business Day" shall mean a day other than a Saturday, Sunday or legal holiday.

(g) "Claim" shall have the meaning provided for such term in section 101(5) of the Bankruptcy Code.

(h) "Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

(i) "Confirmation Order" shall mean a Final order of the Bankruptcy Court confirming the provisions of this Plan, pursuant to section 1129 of the Bankruptcy Code.

(j) "Debtor" shall mean University Shoppes, LLC, the Debtor-In-Possession in this Chapter 11 proceeding currently pending in the United States Bankruptcy Court for the Southern District of Florida.

(k) "Disbursing Agent" shall mean the person appointed under the Plan to administer and disburse the cash payments to be made pursuant to Article V of the Plan. The Disbursing Agent shall be the Debtor.

(l) "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtor's Schedules filed in connection with the Chapter 11 case of the Debtor, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

(m) "Effective Date" means the 10th day following the Confirmation Date, and in the event that such date is not a Business Day, the next day thereafter.

(n) "Plan" shall mean this Plan of Liquidation in its entirety, together with all addenda, exhibits, schedules and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

(o) "Priority Claim" shall mean a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

(p) "Priority Tax Claim" shall mean a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

(q) "Rejection Claim" shall mean a Claim arising under section 502(g) of the Bankruptcy Code from the rejection under section 365 of the Bankruptcy Code, or under this Plan, of an executory contract or unexpired lease of the Debtor that has not been assumed.

(r) "United States Trustee" shall mean the Assistant United States Trustee for the Southern District of Florida.

## ARTICLE II

### *Classifications of Claims and Interests*

An allowed Claim is part of a particular class only to the extent that the Allowed Claim qualifies within the definition of that Class and, is in a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

**Unclassified Claims**

Administrative Claims are unimpaired under the plan. The Debtor shall pay any administrative claim allowed under Section 503 of the Bankruptcy Code.

There shall be seven (7) classes of claims in interests as follows:

*(a)* **Class I Priority Tax Claim (Unimpaired):** Miami Dade County Tax Collector.

*(b)* **Class II Priority Claims. (Unimpaired):** None Known at this time.

*(c)* **Class III Secured Claim. (Impaired) :** Bank of America, N.A.

*(d)* **Class IV Second Lien Holder on Property:** HBAR Realty, LLC

(e) **Class V Unsecured Portion of Bank of America's Claim:** Bank of America, N.A.

(f) **Class VI Contingent Unsecured Creditor:** HBAR Realty, LLC

## ARTICLE III

### *Treatment of Claims and Interests*

(a) **General.** All payments under this plan shall paid as indicated in each individual class, and if not specifically mentioned, shall commence 60 days after confirmation of the plan.

(b) **Administrative Claims:** Administrative Claims are unimpaired under the plan. The Debtor shall pay the allowed claims of the following administrative claims as set forth below:

> i. Any administrative claim allowed under Section 503 of the Bankruptcy Code, upon appropriate application and as granted by the Court, the Debtor shall pay in full and in cash within thirty (30) days of the effective date of the plan or as otherwise agreed between the claimant and Debtor.
>
> ii. Debtor paid to Counsel of record, Paul DeCailly, a fee of $4,500.00 for pre-petition services plus $3,000.00 towards post-petition service. Additional fees as approved by the Court shall be paid within fourteen (14) days of the effective date of the plan or as agreed between Debtor and Counsel. Administrative costs for counsel are estimated to be approximately $20,000.00 above what was paid by the Debtor.

(c) **Class I Priority Tax Claims: (Unimpaired)** Each Holder of an Allowed Priority Tax Claim shall be paid in cash on the Effective Date of the Plan. Notwithstanding the foregoing, each Holder of an Allowed Priority Tax Claim may be paid under such terms as may be agreed upon by both the Holder of such allowed claim and the Debtor or Reorganized Debtor, as the case may be.

(d) **Class II Priority Claims (Unimpaired):** Each Holder of an Allowed Priority Claim shall be paid in cash 14 days after the Effective Date of the Plan. Notwithstanding the foregoing, each Holder of an Allowed Priority Claim may be paid under such terms as may be agreed upon by both the Holder of such allowed claim and the Debtor or Reorganized Debtor, as the case may be.

(e) **Class III secured Claim of Bank of America (Impaired):**

The Class III Claim of Bank of America shall be treated as follows:

    a. Bank of America shall have an Allowed Claim on its Collateral in the amount of $16,000,000.00, or as determined by the Court upon proper application.

    b. The Amount of Bank of America's Allowed Secured Claim shall be determined by the Court on Debtor's objection to Bank of America's Claim or by agreement by the parties.

    c. Bank of America shall retain its lien, to the extent of the secured portion of the Allowed Class three Claims; however, Debtor shall make interest only payments on $23,000,000.00 at 4.20% commencing 60 days after confirmation for 48 months, and thereafter per the contract terms at the full amount of the balance due under the note.

    d. The Balance of Claimant's indebtedness over $23,000,000.00 shall be treated under class V unsecured creditor.

    e. The Debtor has the exclusive option to sell or refinance the property for the current agreed value of $16,000,000.00 in full satisfaction of the debt within the first 48 months but only after the first 12 months after confirmation can the option to sell or refinance be exercised by the Debtor.

(f) **Class IV: Second Lien on Property of HBAR Reality, LLC: (Impaired):** HBAR Reality, LLC shall have an Allowed claim on its Collateral in the amount of 10% of the outstanding Loan Balance payable at 0.00% interest in 12 equal monthly payments. The Balance of HBAR Reality, LLC's allowed Claim shall be treated as an unsecured claim in Class 6.

(g) **Class V: Unsecured Portion of Bank of America's Claim (Impaired):** Bank of America will be paid an amount equal to all funds that are in possession of the Debtor in the DIP Account as of March 30, 2010, all money currently held by Creditor, Bank of

America, in escrow for Taxes, Insurance and Repairs and an assignment of all rights to pursue and collect the any judgment against Roxy Theater Group for past due rents as payment in full for the unsecured portion of their claim.

(h) **Class VI Unsecured Contingent Creditor (Impaired):** HBAR Realty, LLC shall receive no further distribution under the plan pending the fixing of the amount due and thereafter, shall receive an additional 50% of its claim at 0.00% interest payable in 60 equal monthly payments.

Payment of U.S. Trustee's Fees: notwithstanding any other provision of the plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 USC §1930(a)(6), within 10 days of entry of the order confirming this plan, for pre-confirmation periods and simultaneously provide to the United States Trustee and appropriate affidavit indicating the cash disbursements for the relevant period. The Debtor, as Reorganized Debtor, shall further pay to the United States Trustee the appropriate sum required pursuant to 28 USC §1930(a)(6), until the earlier of the closing of this case by the issuance of a final decree by the Bankruptcy Court or upon entry of an order by the Bankruptcy Court dismissing this case or converting this case to another chapter of the United States bankruptcy code, and the liquidating Debtor shall provide to the United States Trustee upon payment of each post confirmation payment in appropriate affidavit indicating all the cash disbursements for the relevant period.

**Blank Ballots:** any ballot not filed in accordance with the filing instructions on the ballot pertaining to this plan shall not be counted for voting purposes.

## ARTICLE IV

### *Impairment*

Claims in classes III, IV, V, & VI are impaired under this plan. Impaired classes will be treated as fully set forth in Article III above.

## ARTICLE V

### *Means of Execution and Security for Payments*

The cash payments under the plan shall be made out of the proceeds from the monthly rents collected. Debtor shall be responsible for maintaining its own reserve accounts for taxes and insurance. Secured Creditor continues to have a lien to the extent of the current market value on the property, and also the assignment of rents remains in full force and effect.

Debtor will create a new repair reserve with Bank of America with the capital investment by Quick Capital Corp. and the return of funds paid to insiders during the preference period, subject to an agreement on the terms of withdrawal from the fund for reimbursement of cost of repairs.

Upon entry of the Confirmation Order, the Debtor shall be vested with all of its property free and clear of all claims and interests of Creditors, except as otherwise provided for herein.

## ARTICLE VI

### *Executory Contracts*

Any and all Executory Contracts and unexpired leases of the Debtors not expressly assumed herein, assumed prior to the Confirmation Date, or not at the Confirmation Date the subject of pending application to assume, shall be deemed to be rejected.

Specifically, Debtor assumes all tenant leases with the exception of Roxy Theater Group. The Debtor rejects any lease, oral or written that exists or may exist between Debtor and Roxy's Theater Group.

## ARTICLE VII

### *Effect of Confirmation*

Discharge - Except as otherwise provided in this Plan, Confirmation of the Plan and full compliance and performance with the Plan, shall be deemed to have discharged the Debtor from any Claim that arose on or prior to the Confirmation Date, and any Claim of a kind specified in Section 502(g), (h) or (i) of the Bankruptcy Code, whether or not:

(a) a Proof of the Claim is filed or deemed to be filed under Sections 501 and 1111(a) of the Bankruptcy Code;

(b) such Claim is allowed under Section 502 of the Bankruptcy Code; or

(c) the holder of such Claim has accepted the Plan.

(d) The payments to be made by Debtor pursuant to this Plan shall be in full settlement and satisfaction of all Claims against Debtor.

## ARTICLE VIII

### *Cram Down, Modification, Substantive Consolidation*

UTILIZATION OF CRAM DOWN

If all of the applicable provisions of 11 U.S.C. §1129(a) other than paragraph (8), are found to have been met with respect to the Plan, the Debtor may seek confirmation pursuant to 11 U.S.C. §1129(b). For the purposes of seeking confirmation under the cram-down provisions of the Code, should that alternative means of confirmation prove to be necessary, Debtor reserves the right to modify or vary the treatment of the claims of the rejecting Classes so as to comply with Section 1129(b) of the Code.

MODIFICATION OF PLAN

The Debtor may propose amendments to or modifications of this Plan at any time prior to confirmation with the leave of Court upon notice to parties entitled to receive the same. After

confirmation, the Debtor may, with the approval of this Court, and so long as it does not materially adversely affect the interests of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

## ARTICLE IX

### *Retention of Jurisdiction*

From and after entry of the Confirmation Order, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the liquidation case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim or any controversy as to the classification of Claims;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses to professionals as well as to hear and determine claims entitled to priority under Section 507(a)(1) of Title 11;

(c) to enable the Debtor to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtor may be entitled under applicable provision of the Bankruptcy Code or any other Federal, State or local laws; including causes of action, controversies, disputes, and conflicts between the Debtor and any other party, including but not limited to any causes of action for objections to claims, preferences or fraudulent transfers and obligations or equitable subordination; and to enter any Order assuring that good, sufficient and marketable legal title is conveyed to the purchaser of the Debtor's property.

(d) to consider any necessary valuation issues under Section 506 of the Code, and any proceeding to determine the amount, validity and priority of liens, in connection with the Debtor's property.

(e) to determine the rights of any party in respect of the assumption or rejection of any executory contracts or unexpired leases.

(f) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or Order of Confirmation, as may be necessary to carry out the purposes and intent of this Plan.

(g) to modify this Plan after Confirmation, pursuant to the Code.

(h) to enforce and interpret the terms and conditions of this Plan.

(i) to enter Orders to enforce the title, rights and power of the Estate as the Court may deem necessary.

(j) to enter Orders concluding and closing this case.

## ARTICLE X

### *Miscellaneous*

(a) **Headings.** Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

(b) **Defects, Omissions and Amendments.** This Plan may be altered, amended or modified by Debtor before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

(c) **Governing Law.** Except to the extent that the Bankruptcy Code or Florida Corporate Law is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

(d) **Severability.** Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

(e) **Regulatory Approval.** No regulatory approval is necessary for the confirmation of this Plan.

Dated: March 30, 2010

                                                                                                                 /s/ _____
University Shoppes, LLC - Debtor
By: University, LLC
Managing Member


/s/ Paul DeCailly
Paul DeCailly, Attorney at Law
3111 W. Dr. Martin Luther King Jr. Blvd
Suite 100
Tampa, FL 33607
Telephone (813) 286-2909
Fax (866) 906-5977
Florida Bar No. 796301
Attorney for Debtor